UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04 CR 31-1

United States of America,

        Plaintiff,

v.

Donald Leonard Keys,

        Defendant.

DEFENDANT'S MEMORANDUM
OF LAW SUPPORTING MOTION
FOR DOWNWARD SENTENCING
DEPARTURE

I. Introduction

In his Motion for Downward Departure already filed, Mr. Keys requests that the Court depart downward from the presumptive Guidelines Sentence of 235-293 months to the mandatory minimum of 180 months (15 years). We discuss the basis for this departure below.

II. Legal Basis for Departure

    A. Downward Departures After 2003 Amendments to Sentencing Guidelines

As an initial matter, we discuss the availability of a downward departure in light of the PROTECT Act enacted by Congress on April 30, 2003. The PROTECT Act (Prosecutorial Remedies and Other Tools to end the Exploitation of Children, codified as, Pub. L. No.108-21) made changes to numerous statutes, and to the Federal Sentencing Guidelines. Among the changes it effected to the Sentencing Guidelines, the PROTECT Act in section 401(b) limited the availability of downward departures in child crime and sex offense cases. As reflected in Guideline 5K2.0(b), amended effective April 30, 2003, and amended again effective October 27, 2003 (see amendments 649 and 651,

respectively) to reflect the changes required by the PROTECT Act, departure grounds in such cases are limited to those grounds identified in Park K of Chapter Five of the Guidelines. The PROTECT Act not only limits departures in child offense and sex cases to the grounds stated in Part K of Chapter Five, it also prohibits certain departures allowed by Part K of Chapter Five from being used to depart in a child offense or sex offense case. See, amended Guideline 5K2.0(d) (amendment 651), which prohibits in such cases departing on the basis of post-sentencing rehabilitative efforts. See also amended Guideline 5K2.0(c), which limits departures based on multiple circumstances (amendment 651).

The grounds for departure that Mr. Keys asks the court to rely on for a downward departure, although legitimate and legally recognized in other sections of the Guidelines or by case law as grounds for departure, are not specifically identified as grounds for departure in Part K of Chapter Five of the Guidelines. However, the PROTECT Act does not apply to the aspect of Mr. Keys' case involving his request for a sentencing departure because the Ex Post Facto Clause of the U.S. Constitution, Article I, Section 9, prevents removing a basis for a downward sentencing departure that existed as of the date of the defendant's offense(s) but which has been removed or ruled out as a basis for departure as of the date of sentencing. The last of the two offenses with which Mr. Keys was charged is alleged to have occurred April 22, 2003, which is eight days before the April 30, 2003 effective date of the PROTECT Act and the first set of amendments (see amendment 649) it directed to be made to the Sentencing Guidelines, and more than six months prior to the

effective date of the rest of the Guideline amendments that implemented the PROTECT Act (see amendment 651, effective October 27, 2003).

Analysis of the Ex Post Facto Clause in the context of sentencing departure grounds under the Guidelines makes this clear. The Ex Post Facto Clause prevents a new law from making more burdensome the punishment of a crime after the crime was committed. United States v. Bell, 991 F.2d 1445, 1448 (8th Cir. 1993). See also, Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960 (1981).

This principle applies in the context of amendments to the Sentencing Guidelines. Bell, id. The Guidelines themselves recognize the applicability of the Ex Post Facto Clause. See Guideline 1B1.11(a) and (b)(3). A change in the law makes punishment more burdensome and thereby implicates the Ex Post Facto Clause if it creates a sufficient risk of increasing the measure of punishment attached to the crime at issue. California Dept. of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597 (1995). Such a risk is apparent "if, after comparing the two . . . schemes as a whole," the new law is "detrimental" to the defendant. Id. The defendant is not required to show with certainty that he would receive a lesser sentence if the new law were not being applied to him, only that he may receive a lesser sentence. Miller v. Florida, 482 U.S. 423, 432-33, 107 S.Ct. 2446 (1987).

As for Guideline amendments that remove grounds for downward departures that were available as of the date of the defendant's offense, these amendments have widely been determined to violate the Ex Post Facto Clause because they make the punishment

that can be imposed for a crime more burdensome than it was at the time the offense was committed.  United States v. Clark, 8 F.3d 839, 845 (D.C. Cir. 1993) (1992 Guideline amendment removing lack of youthful guidance as a departure ground violated Ex Post Facto clause); United States v. Johns, 5 F.3d 1267, (9th Cir. 1993 (same); United States v. Burrows, 36 F.3d 875, 883 (9th Cir. 1994) (same); United States v. Kim, 364 F.3d 1235, 1242 (11th Cir. 2004) (PROTECT Act's exclusion of extraordinary restitution as a downward departure factor cannot be applied retroactively); United States v. Schnepper, 302 F.Supp.2d 1170, 1185 (D. Hawaii 2004) (PROTECT Act's removal of aberrant behavior as  a departure ground violated ex post facto clause), and United States v. Mateo, 299 F.Supp.2d 201, 213  (S.D. New York, 2004) (Application of PROTECT Act amendment prohibiting the combining of so-called considered and unconsidered factors in awarding a downward departure based on multiple circumstances would violate Ex Post Facto Clause).[1]

There is no question that the PROTECT Act amendments that limit the available grounds for departure in child offense and sex cases to grounds stated in Part K of Chapter Five of the Guidelines operate to remove grounds for departures that were available as of the time of Mr. Keys' offenses, and therefore they substantially

---

[1] See also, United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001) (remanding case for resentencing after district court erred in previous resentencing, and allowing defendant to argue for downward departure based on post-sentencing rehabilitation although Guideline 5K2.19 (prohibiting such departures) was effective at time of first resentencing), and United States v. Buckley, 251 F.3d 668, 670 (7th Cir. 2001).

disadvantage him. The court should therefore find that the PROTECT Act amendments limiting the grounds available for departure in Mr. Keys' case are precluded by the Ex Post Facto Clause.

### A. Overstated Criminal History Category

This ground for departure is recognized under Guideline 4A1.3. See also, United States v. Senior, 935 F.2d 149, 150-51 (8th Cir. 1991). It applies in Mr. Keys' case because his presumptive Criminal History Category of V, which is required by Guideline 4B1.5(a)(2), overstates the seriousness of his criminal history. This is because Mr. Keys' only conviction, a 1971 attempted sodomy conviction involving a seventeen-year old, makes Guideline 4B1.5(a)(1)(B)(ii) apply to him, thus making his offense level increase from level 27 to level 34), and the same conviction also automatically imposes pursuant to 4B1.5(a)(2) a Criminal History Category of V.

The 1971 conviction, the only one Mr. Keys has, thus works to a disproportionate degree to increase his sentence. If he had other offenses that gave him criminal history points then the 1971 conviction would be less likely to overstate the effect of his criminal history, since a significant criminal history score consisting of offenses other than the 1971 conviction could get him to Category V or higher. But he has no such other offenses. Hence, where just this one conviction gets Mr. Keys a seven-level increase in his offense severity level, and an automatic classification as Criminal History Category V even though he has no other criminal history points, its effect is obviously to overstate the impact of his criminal history.

There is no question that a departure under 4A1.3 is both available and appropriate. Case law readily establishes this. Normally, a departure under 4A1.3 excludes for computation purposes a conviction that already counts toward the defendant's criminal history score. As noted above, however, owing to the age of the 1971 conviction, it does not directly give Mr. Keys' a criminal history score. See PSI, para. 27. It is nonetheless proper to apply 4A1.3 to depart because Guideline 4B1.5(a)(2) determines criminal history category by reference to ". . . the greater of (A) the criminal history category determined under Chapter Four, Part A (Criminal History); or (B) criminal history Category V."

The significance of the reference to "the criminal history category determined under Chapter Four, Part A" is that computing a criminal history score under Chapter Four makes the rest of Chapter Four applicable, including the departure provision of Guideline 4A1.3. This shows an intent on the part of Congress and the Sentencing Guidelines Commission to utilize Chapter Four in determining the criminal history score for purposes of Guideline 4B1.5. Because departures for overstated criminal history are part of Chapter Four, and because Guideline 4B1.5 uses the criminal history score computed by reference to Chapter Four, it is logical to conclude that for purposes of applying Guideline 4B1.5 that a 4A1.3 departure for overstated criminal history is available.

The PROTECT Act amendments also demonstrate the correctness of this conclusion. Although these amendments do not apply because the Ex Post Facto Clause

precludes them from applying (see preceding discussion), the October 27, 2003 amendment to Guideline 4A1.3 concerning downward departures for overstated criminal history scores is revealing. This amendment prohibits 4A1.3 departures in the case of repeat and dangerous sex offender under 4B1.5. See Guideline amendment 651, which created Guideline 4A1.3(b)(2)(B), effective October 27, 2003. If a 4A1.3 departure for overstated criminal history score was not available to a defendant to whom Guideline 4B1.5 applies prior to the October 27, 2003 PROTECT Act amendments, it is difficult to see why Congress in the PROTECT Act and the Sentencing Guidelines Commission specifically sought to prohibit such departures beginning October 27, 2003.[2]

The effect of departing from the Criminal History Category of V would be to place Mr. Keys in the Criminal History Category he would occupy apart from operation of Guideline 4B1.5(a)(2), which is Category I. Even if the 1971 conviction could still be used for purposes other than computing the Guideline 4B1.5(a)(2) criminal history category, and Mr. Keys therefore remained at level 34 (required by Guideline 4B1.5(a)(1)(B)(ii), his range would be 151-188 months. This would allow for a sentence

---

[2] In his Position of the Defendant With Respect to Sentencing Factors, Mr. Keys also asserts that his 1971 conviction is too old to be counted under Chapter Four. See Guideline 4A1.2(e)(1). In addition to the separate rationale for departing under 4A1.3 for an overstated criminal history score, Mr. Keys asks the court, in light of his argument that 4B1.5 uses the Chapter Four rules for determining which prior convictions count, to determine that 4B1.5 does not apply to him because the conviction is too old to be counted.

consistent with the mandatory minimum of 180 months.[3]

    B. <u>Departure based on atypical offense conduct</u>

Mr. Keys' offense conduct was not what the statute under which he was convicted, 18 U.S.C. 2251, was particularly aimed at criminalizing, or what the relevant Sentencing Guidelines provision (4B1.5) aimed at for purposes of developing a sentencing range appropriate to the "heartland" of cases, which are high volume, commercialized creations of child pornography. Mr. Keys' offense consisted of creating only 27 visual images, which were only of B.A.B. and himself engaged in consensual sexual activity. Because Mr. Keys was not in a position of authority over B.A.B., his sexual relationship with him did not violate any State law. The creation of the photos was not purpose of the enticement, the sexual relationship was. The photos were created as an incident to that lawful relationship and were not the main purpose of it. The offense is thus less serious than that typical of people who violate 18 U.S.C. 2251.

In our accompanying Memorandum of Law concerning the forfeiture issue, we discuss in detail the facts of Mr. Keys' offense conduct that differentiate it from most types of conduct prosecuted under 18 U.S.C. 2251. We incorporate that discussion at pages 7-8 of that Memorandum here. Accordingly, and as justified more fully in the discussion below, a departure is warranted from the repeat and dangerous sex offender

---

[3] In <u>United States v. Senior</u>, <u>id</u>., at 150-51, the Eighth Circuit affirmed a departure under 4A1.3 in which the district court, after finding the defendant's criminal history was overstated, departed from both the criminal history category and the offense severity level.

Guideline (4B1.5), application of which would result in a sentencing range of 235-293 months, which is 55-113 months above the mandatory minimum of 180 months.[4]

Under the United States Sentencing Guidelines, Congress has given the Courts authority to depart from the applicable Guideline sentence if:

> the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating in the guidelines that should result in a sentence different from that described.

18 U.S.C. §3553(b).

The Sentencing Guidelines acknowledge that a factor such as atypical offense behavior, even though not one of the grounds for departure specifically set out in Chapter Five of the Guidelines, can be a basis for a departure if it is sufficiently unusual to take the case out of the Guidelines' heartland.  See, U.S.S.G. 5K2.0 (policy statement) (2002 Edition) ("Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission"), and U.S.S.G. Ch. 1, Pt. A(4)(b)(policy statement) (2002 Edition).[5]  See also, United States v. Allery, 175 F.3d

---

[4] We do not discuss the type of conduct covered by Mr. Keys' conviction under Count II, possession of child pornography under 18 U.S.C. 2252 because his conviction on Count II does not implicate Guideline 4B1.5, from which Mr. Keys seeks a departure. This is because 4B1.5 does not apply if the instant covered offense of conviction is possession of child pornography.  See App. Note 2 to 4B1.5.

[5] As a result of the PROTECT Act amendments the U.S.S.G. Ch. 1, Pt. A(4)(b)(policy statement) commentary now has the status of an editorial note, relevant to context and historical purposes, and the comment to 5K2.0   See amendment 651, effective October 27, 2003.  Because this is a substantive change, however, the Ex Post Facto analysis we have provided precludes application of this change, as well.

610, 613 (8th Cir. 1999) (No abuse of discretion in granting downward departure for defendant convicted of sexual contact by use of force based on finding that force used was minimal); United States v. Diaz-Diaz, 135 F.3d 572, 579-80 (8th Cir. 1998) (If factor is unmentioned in Guidelines, departure on that basis is permissible only when circumstances of the case are atypical); and United States v. Sicken, 223 F.3d 1169, 1175 (10th Cir. 2000) (Downward departure for defendants convicted of breaking into missile site permissible where applicable Guideline did not adequately take into consideration the seriousness of the offense conduct).

In Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035 (1996), the Supreme Court recognized the authority the Federal courts have to depart pursuant to 18 U.S.C. 3553(b) and the Sentencing Guidelines that implement 3553(b).  Koon states that the Guidelines "place essentially no limit on the number of potential factors that may warrant departure." 116 S.Ct. at 2050.  There are some factors that courts may never use to justify a departure, but aside from those few factors, the Commission did not "intend to limit the kinds of factors, whether or not mentioned anywhere else in the Guidelines, that could constitute grounds for departure in an unusual case."  Id., citing U.S.S.G. ch. 1,, pt. A, Intro. Comment 4(b).  Although the 2003 PROTECT Act amendments are considered to have overruled Koon to varying extents, because the Ex Post Facto Clause precludes application of those amendments in our case, it is appropriate to apply the Koon analysis to determine the appropriateness of the departure Mr. Keys requests based on the atypical nature of his offense conduct.

The Supreme Court in <u>Koon</u> has instructed the Federal District Courts to answer the following questions to decide if a particular case presents appropriate reasons for a departure:

    1. What features of this case, potentially, take it outside the Guidelines' "heartland" and make of i

    2. Has the Commission forbidden departures based on those features?

    3. If not, has the Commission encouraged departures based on those features?

    4. If not, has the Commission discouraged departures based on those features?

116 S.Ct. at 2045.

In elaborating on this analysis the Supreme Court said in <u>Koon</u>:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If a special factor is an encouraged factor, the Court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the Court should depart only if a factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. . . . If the factor is unmentioned in the Guidelines, the Court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," . . . . decide whether it is sufficient to take the case out of the Guideline's heartland. The Court must bear in mind the Commission's expectation and departures based on grounds not mentioned in the Guidelines will be "highly infrequent." 1995 U.S.S.G. ch. 1, pt. A.

116 S. Ct. at 2045.

In Mr. Keys' case, the feature that takes it outside the Guidelines' "heartland" and make of it a special or unusual case is the atypical nature of the offense conduct, as discussed above. The Guidelines Commission has not forbidden departures based on this

ground, nor has it discouraged or encouraged departures on this basis.  The proffered departure ground thus need not be present to an exceptional degree.  The question therefore is whether, in light of the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," . . . . the proffered departure ground of atypical offense conduct is sufficient to take the case out of the Guideline's heartland.

Comparing the facts of Mr. Keys' offenses with the Guidelines that determine his offense severity level, Guidelines 2G2.1 and 4B1.5, it is apparent that the production of the sexually explicit visual images of sixteen-year old B.A.B. in the context of an otherwise legal sexual relationship does not fall within the heartland of cases to which these Guidelines were intended to apply.  The typical defendant would have enticed multiple, and much younger, children to produce vast numbers of sexually explicit images, and would have done so outside of the context of legal sexual relationship with the minor who was being photographed.  This is not what happened in Mr. Keys' case.

Because it is actually Guideline 4B1.5 (enhancement for repeat sex offenders against minors) from which the departure would be taken, since that Guideline is the one that puts Mr. Keys above the 15-year mandatory minimum sentence, it is significant that the same distinctions between the typical offense conduct covered by Guideline 2G2.1 and the offense conduct in Mr. Keys' case also exist with respect to the offense conduct that typically triggers application of Guideline 4B1.5 and the instant offense conduct in Mr. Keys' case.  In other words, the typical instant offense that makes 4B1.5 applicable would be, as pointed out above, very much <u>unlike</u> the facts of Mr. Keys' case, which

involved a legal, consensual sexual relationship during which a small number of sexually explicit images were created as an incident to the relationship and not as the primary purpose of the relationship.

This distinction supports a finding that Mr. Keys' offense behavior is atypical of the heartland of cases covered by 4B1.5 because it is less serious than the typical case that triggers application of 4B1.5. The central purpose of the Guidelines is to allow the sentence to reflect the seriousness of the offense, United States v. Sicken, id., at 1176, but Guideline 4B1.5does not allow the relative seriousness of the instant offense of conviction to be taken into account in determining whether the significant increase it occasions in offense level severity and criminal history is appropriate. Therefore, the atypical relative lack of seriousness of the instant offense can properly be considered as a departure ground.

In United States v. Allery, id., the Eighth Circuit found that the amount of force the defendant used to have sex was sufficient to sustain the conviction because it was virtually the least amount of force that could be used, and therefore that the district court properly concluded that the case necessarily fell outside the heartland of cases covered by the relevant guidelines. This court should likewise conclude in Mr. Keys' case that the atypical facts of his case take it outside the heartland of cases covered by the above-referenced Guidelines.

The effect of a departure premised on atypical offense conduct would be to depart from the presumptive sentence range of 235-293 months to the mandatory minimum

sentence of 180 months.

   C. Departure for post-offense rehabilitation

An alternative or additional ground for departure is Mr. Keys' post-offense rehabilitation. We point out that this departure ground is not the impermissible one referred to in Guideline 5K2.19, which prohibits a departure for post-sentencing rehabilitation, such as when a defendant whose case is remanded for re-sentencing on some other basis seeks a departure at that time based on rehabilitation accomplished while in prison. The ground on which Mr. Keys relies is the entirely permissible and judicially-recognized departure ground of post-offense rehabilitation. See, United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997). A departure on this basis is a "fact-based judgment that falls within the sentencing court's discretion." Id., at 824.

This factor must be present to an exceptional degree if a defendant has already received a reduction in offense severity level for acceptance of responsibility because post-offense rehabilitation is included in determining if the defendant has accepted responsibility. See, United States v. Kapitzke, id., and United States v. DeShon, 183 F.3d 888, 889 (8th Cir. 1999). However, if the court does not grant Mr. Keys' request for a reduction based on acceptance of responsibility, then post-offense rehabilitation in his case need not be present to an extraordinary degree.

Because Mr. Keys has not been in custody since his indictment and after his conviction, it would have been be relatively easy for him to try to solicit a minor to create sexually explicit visual images, but there is no evidence he has done so since the date of

15

the last alleged offense, 22 April 2003, which is approximately 18 months ago.  This is evidence of post-offense rehabilitation, albeit not extraordinary rehabilitation.  In <u>United States v. Jones</u>, 158 F.3d 492, 503 (10th Cir. 1998), a felon-in-possession case, the Tenth Circuit affirmed a downward departure premised in part on post-offense rehabilitation consisting of scrupulous compliance with the conditions of release, steady work, regular consultations with a psychologist, and positive changes in attitude and conduct.  Mr. Keys can demonstrate most if not all of these factors in his case.

If Mr. Keys does not receive a reduction in his offense level for acceptance of responsibility, the post-offense rehabilitation need not be present to an extraordinary degree.  Under these circumstances, the rehabilitation he has shown is sufficient to take his case outside the heartland of cases and warrant a departure based on post-offense rehabilitation.  The departure should take the form of not departing from the presumptive Guideline range of 235-293 months to the mandatory minimum of 180 months.

D. <u>Departure based on multiple circumstances</u>

If any of the foregoing grounds for departure is not considered sufficient by itself to warrant the requested downward departure to the mandatory minimum, then Mr. Keys asks the court to grant the departure because the above-asserted grounds considered cumulatively justify it.

The use of multiple circumstances to support a departure in a case where none of the departure grounds considered individually would take a case outside of the heartland of cases covered by the sentencing guideline from which a departure is sought has been

16

limited by the PROTECT Act. Now, the multiple circumstances must be identified in the Guidelines as permissible grounds for departure, and not all of the departure grounds Mr. Keys asserts are specifically identified, even though they are all legally recognized grounds for departure. See Guideline 5K2.0(c). However, because removing a basis for departure that existed at the time of Mr. Keys' last offense date would be a substantive change to the Guidelines that would be a substantial detriment because it potentially increases, subsequent to his offense date, the punishment that can be imposed, it cannot be applied to Mr. Keys. United States v. Mateo, 229 F.Supp.2d at 205.

In United States v. Jones, id., the Tenth Circuit upheld a downward departure based on the aggregation of a number of permissible departure grounds. Jones stated that the Sentencing Commission explicitly left open "the possibility of an extraordinary case that, because of the combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the "heartland" of cases covered by the Guidelines." Id., at 504. In our case, the factors we have identified as supporting a departure are relevant to a departure, even though two of them are not specifically listed in the Guidelines as departure factors. See also, United States v. Broderson, 67 F.3d 452, 459 n.1 (2d. Cir. 1995) (Guidelines recognize the possibility of an "extraordinary case" in which a combination of factors fall outside the heartland of cases and justify a departure).

III. Summary

The first asserted ground for departure is premised on the use of Mr. Keys' 1971 attempted sodomy conviction overstating his criminal history because that one conviction

brings about both a seven-level increase in offense level and an automatic criminal history classification in Category Five.  Mr. Keys' second ground for departure is that neither the basic offense Guideline, 2G1.2 nor the enhancing Guideline, 4B1.5, adequately take into account that the visual images Mr. Keys was convicted of creating were created in the context of a legal sexual relationship and were an incident of that relationship, not the purpose of it, which is not typical of most people who entice minors to create child pornography.  Mr. Keys' third basis for departure is his post-offense rehabilitation, which need not be present to an extraordinary degree if he does not meet the criteria for acceptance of responsibility.

These grounds each independently suffice to take Mr. Keys' case outside the heartland and warrant a departure to the mandatory minimum, but even if they do not, given the substantial and relevant nature of each one, and especially given the fact that they do not overlap but each rely on different facts and legal criteria, in the aggregate they justify a departure to the mandatory minimum sentence.

Respectfully submitted:

 s/Earl P. Gray
Earl P. Gray     Atty. No.37072
332 Minnesota Street
Suite W-1610
St. Paul, MN 55101
(651) 223-5175

Attorney for Defendant